UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REBECCA GIALLELLA,<br><br>   *Plaintiff*,<br><br>  v.<br><br>UNITED PROPERTY MANAGEMENT, INC., *et al.*,<br><br>   *Defendants*. | Civil Action No. 23-1978 (RDM) |

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion to dismiss filed by Defendant United Property Management ("UPM"), Dkt. 17, Plaintiff Rebecca Giallella's opposition, Dkt. 21, and UPM's reply, Dkt. 22. UPM moves to dismiss for failure to state a claim, lack of personal jurisdiction, and improper venue. For the reasons explained below, the Court will grant UPM's motion to dismiss for lack of personal jurisdiction, but will sever Giallella's claims against UPM and transfer those claims to the Southern District of Florida.

### I. BACKGROUND

Giallella brings this action against UPM, Equifax Information Services, LLC, and Experian Information Solutions, LLC, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681. Dkt. 1 at 13–19 (Compl. ¶¶ 81–129). For purposes of resolving UPM's motion to dismiss, the Court takes the well-pleaded allegations in the complaint as true. *See Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 67 (D.C. Cir. 2015).

Giallella is a resident of Washington, D.C. Dkt. 1 at 2 (Compl. ¶ 2). Defendant UPM is a property management company incorporated and headquartered in Miami, Florida. *Id.* (Compl.

¶ 3); Dkt. 17-1 at 7.  This case arises from Giallella's discovery that she was the victim of identity theft.  The identity thief signed a lease to rent an apartment in Florida in Giallella's name.  Dkt. 1 at 5 (Compl. ¶¶ 28–30).  That apartment building was managed by UPM.  *Id.* at 5–6 (Compl. ¶ 33).

Under the FCRA, UPM is a "furnisher of information" about consumers to credit reporting agencies, such as Defendants Equifax and Experian.  Dkt. 17-1 at 7; Dkt. 1 at 3 (Compl. ¶¶ 10–11).  Thus, several months after the identity thief signed the lease, UPM informed credit reporting agencies that the lease in Giallella's name was in default.  Dkt. 1 at 6 (Compl. ¶ 38).  When Giallella noticed the lease on her credit report, "Giallella wrote to UPM explaining that the lease was fraudulent."  *Id.* (Compl. ¶¶ 39–40).  Giallella forwarded supporting documentation to UPM regarding the identity theft, but UPM informed her that "a copy of a police report regarding the incident is needed to investigate further."  *Id.* at 6–7 (Compl. ¶ 42).  Giallella did not send UPM a police report.  *See* Dkt. 17-3 at 1–2.[1]

Giallella then filed a dispute regarding the lease with Defendant Equifax, which subsequently "forwarded Giallella's dispute to UPM."  Dkt. 1 at 7 (Compl. ¶¶ 43–45).  "[W]hen UPM responded to Giallella's dispute," it updated its reporting to Equifax by "incorrectly" identifying the lease as a "mortgage."  *Id.* at 7, 9 (Compl. ¶¶ 48, 56).  Giallella alleges that UPM

---

[1] Although the Court generally may not consider matters "outside" the pleadings in ruling on a motion to dismiss, Giallella acknowledges in her opposition brief that the Court may consider Giallella's email exchange with UPM, which is attached to UPM's motion to dismiss, because "it is referenced in the Complaint."  Dkt. 21 at 15; *Hinton v. Corrections Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (court may consider documents "incorporated by reference in the complaint . . . even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss").  The Court notes, moreover, that insofar as it must resolve a challenge to personal jurisdiction, the Court "'may look beyond the allegations of the complaint' to do so."  *Triple Up Ltd. v. Youku Tudou Inc.*, 235 F. Supp. 3d 15, 21 (D.D.C. 2017), *aff'd*, WL 4440459 (D.C. Cir. July 17, 2018).

2

then verified to Equifax that the tradeline on Giallella's credit report from the apartment was "accurate." *Id.* at 10 (Compl. ¶ 65).  Giallella claims that UPM violated the FCRA by "refus[ing] to investigate Giallella's complaint of identity theft without a police report,"[2] and "report[ing] the [] tradeline as 'real estate' (i.e., a mortgage) rather than a lease."  *Id.* at 10–11 (Compl. ¶ 66).

Defendants Equifax and Experian filed answers to Giallella's complaint.  Dkts. 15, 16.  UPM moved to dismiss under Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), for lack of personal jurisdiction, improper venue, and failure to state a claim, respectively.  Because the Court concludes that it lacks personal jurisdiction over UPM, the Court need not address UPM's alternative arguments for dismissal.

## II.  ANALYSIS

### A.   Personal Jurisdiction

Personal jurisdiction is, of course, a prerequisite to suit.  In general, "a federal court . . . may not rule on the merits of a case without first determining that it has jurisdiction over . . . the parties."  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Co.*, 549 U.S. 422, 430–31 (2007).  On a motion to dismiss for lack of personal jurisdiction, "[t]he plaintiff has the burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant[s]."  *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).

---

[2] Giallella concedes that her direct exchange with UPM—in which she notified UPM that she disputed the lease—cannot serve as the basis for her FCRA claim.  Dkt. 21 at 5–6 (acknowledging that "no cause of action exists for a furnisher's [i.e., UPM's] failure to investigate a direct credit reporting dispute").  No private right of action exists where a furnisher of information such as UPM fails to investigate a dispute filed directly by a consumer.  *Himmelstein v. Comcast of the Dist., LLC*, 931 F. Supp. 2d 48, 53–54 (D.D.C. 2013); *Johnson v. Cap. One Bank, N.A.*, 2023 WL 2733486, at *1 (D.C. Cir. March 31, 2023).  UPM's liability must instead be premised on 15 U.S.C. § 1681s-2(b), which requires a furnisher of information to investigate a dispute when notified by a credit reporting agency, such as Equifax.

3

Here, the Court must determine whether it has personal jurisdiction over UPM "by reference to District of Columbia law," *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995), as well as constitutional limits.  A plaintiff may establish personal jurisdiction by asserting either general jurisdiction—which "extends to any and all claims brought against a defendant"—or specific jurisdiction—which requires that "[t]he plaintiff's claims . . . arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024–25 (2021) (internal quotation marks omitted); *see* D.C. Code § 13–422 (general jurisdiction); *id.* § 13–423(a) (long-arm statute).

As for general jurisdiction, Giallella makes no allegation that UPM should be "fairly regarded as at home" in the District of Columbia.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *see also* D.C. Code § 13–422.  To the contrary, she avers that UPM "is a Florida corporation" with a "principal office" in Florida.  Dkt. 1 at 2 (Compl. ¶ 3).  The Court, accordingly, lacks general jurisdiction over UPM.  *See* Dkt. 17-1 at 19; Dkt. 21 at 12–13.

Because UPM is not "at home" in the District of Columbia, Giallella must show that UPM is subject to specific jurisdiction under the D.C. long-arm statute, D.C. Code § 13–423(a).  As relevant here, that law allows the Court to exercise personal jurisdiction over a nonresident "as to a claim" arising from that defendant's

> (1) transacting any business in the District of Columbia;
>
> (2) contracting to supply services in the District of Columbia;
>
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]
>
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct,

4

>or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia . . . .

D.C. Code § 13–423. Here, Giallella appears to rely on subsection (a)(4), arguing that UPM's alleged violation of the FCRA caused her "reputational injury" in her home forum. Dkt. 21 at 13–14. Giallella alleges that UPM "had notice" that Giallella resided in D.C. and "would suffer harm" in this forum. *Id.* Giallella concludes that UPM "engaged in a persistent course of conduct, targeting Giallella in D.C., which subjects it to jurisdiction in D.C." *Id.*

The Court is unpersuaded. Even assuming that Giallella has adequately alleged the first prong of subsection (a)(4)—that UPM's alleged FCRA violations caused her to suffer a "tortious injury" in D.C.—she fails to plead "any of subsection (a)(4)'s so-called 'plus factors': regularly do[ing] or solicit[ing] business, engag[ing] in any other persistent course of conduct, or deriv[ing] substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." *McIntosh v. Gilley*, 753 F. Supp. 2d 46, 59 (D.D.C. 2010) (quoting D.C. Code § 13–423(a)(4)). Giallella's assertion that UPM "target[ed]" her and engaged in a "persistent course of conduct" in D.C. is unsupported by any non-conclusory factual allegations in the complaint. The factual allegations regarding UPM are the following: (1) an identity thief "rented a residential property managed by UPM in Florida" in Giallella's name; (2) UPM later notified credit reporting agencies that the lease was in default; (3) Giallella informed UPM that the lease was fraudulent; (4) UPM replied with a request for a police report of the identity theft, which Giallella failed to provide; (5) Equifax informed UPM that Giallella disputed the lease; and (6) UPM incorrectly reported the fraudulent lease to Equifax as a "mortgage" and failed to adequately investigate Giallella's dispute. Dkt. 1 at 5–7, 9 (Compl. ¶¶ 28–42, 45–48, 56).

These allegations fall short of establishing that personal jurisdiction would comport with due process or the D.C. long arm statute. *See Forras v. Rauf*, 812 F.3d 1102, 1108 (D.C. Cir.

5

2016) (explaining that "[s]ubsection (a)(4)'s reach is far more cabined" than the Due Process Clause).  UPM is a property management company in Florida.  The complaint does not allege that UPM solicits, transacts, or does any business in D.C., or engages in any "persistent" conduct here that would satisfy the long-arm statute or create the "minimum contacts" due process requires.  D.C. Code § 13–423(a)(4); *Forras*, 812 F.3d at 1108; *see White v. Hillcrest Davidson & Assocs.*, 952 F. Supp. 2d 80, 84 (D.D.C. 2013) (finding no personal jurisdiction in FCRA suit against a furnisher of information based in Texas where plaintiff, a D.C. resident, alleged that the furnisher reported inaccurate information to credit reporting agencies).

The only alleged connection between UPM and the District of Columbia is Giallella, but as the Supreme Court has explained, "the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).  Rather, specific jurisdiction "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*.  For this reason, a "mere injury to a forum resident is not [] sufficient," even where the defendant has "knowledge" that the plaintiff resides in the forum and will feel an injury there.  *Id.* at 289–90; *see also id.* at 285–86.  Thus, personal jurisdiction cannot be premised on Giallella's allegations that UPM "knew" its actions "would affect Giallella in D.C." Dkt. 21 at 14.  Nor can Giallella rely on UPM's "single" reply to Giallella requesting a police report.  *United States v. Ferrara*, 54 F.3d 825, 831 (D.C. Cir. 1995) (holding that jurisdiction premised on non-resident defendant's "reply" to forum resident would be "[in]sufficient to satisfy due process," let alone "the requirements of the D.C. long-arm statute").

Giallella's reliance on *Calder v. Jones*, 465 U.S. 783 (1984), is also misplaced.  In that case, a California actress brought a libel suit in California state court against a reporter and an editor who worked for a magazine based on Florida.  *Id.* at 788.  Although the plaintiff's claim

6

was based on the reputational injury that she experienced in the forum, the plaintiff's injury did not drive the Court's jurisdictional analysis. Rather, the Court upheld California's exercise of jurisdiction over the defendants based on their "ample" other contacts with California, "not just [those] with the plaintiff." *Walden*, 571 U.S. at 287. "The crux of *Calder*," the Court has subsequently explained, "was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff." *Id.* Accordingly, absent any allegations that UPM has contacts with the District of Columbia, Giallella's "reputational injury" does not suffice. Dkt. 21 at 13–14.

**B.     Transfer**

Giallella suggests that, if the Court lacks personal jurisdiction over UPM, the Court should transfer this case to the United States District Court for the Southern District of Florida, Miami Division. Dkt. 21 at 14. Under 28 U.S.C. § 1406(a), the Court may transfer a case "to any district or division in which it could have been brought" if it finds that doing so is "in the interest of justice." The transferring court, moreover, need not have personal jurisdiction over the defendant simply to transfer a case to a court that does. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465–66 (1962). UPM seeks dismissal, rather than transfer, but acknowledges that the Southern District of Florida would be the appropriate transferee court. Dkt. 22 at 15.

Here, the Court concludes that transfer is in the interest of justice. "As a general matter, a transfer of the case is favored over a dismissal," *Jones v. United States*, 820 F. Supp. 2d 58, 61 (D.D.C. 2011), and is appropriate "when procedural obstacles [such as lack of personal jurisdiction] 'impede an expeditious and orderly adjudication . . . on the merits,'" *Sinclair v. Kleindienst*, 711 F.2d 291, 293–94 (D.C. Cir. 1983). As UPM concedes, *see* Dkt. 22 at 15, Giallella's claims against UPM "could have been brought" in the Southern District of Florida

because UPM "resides" in that district is subject to personal jurisdiction there, 28 U.S.C. § 1406(a); *id.* § 1391(b)–(c) (venue statute).  Transfer is in the interest of justice because it would allow Giallella to seek adjudication on the merits of her FCRA claims against UPM before a court with personal jurisdiction.

There is one final wrinkle, however:  UPM suggests that the Court must transfer the case in its entirety, but notes that "[i]t is not at all clear from the allegations in the Complaint that either of the other two defendants are subject to personal jurisdiction in Florida."  Dkt. 22 at 11.  The Court agrees that it is not clear whether transfer would be proper with respect to Giallella's claims against Equifax and Experian.  But the Court need not transfer the case in its entirety; instead, the Court will "sever claims against [UPM] and transfer the claims pursuant to Rule 21 of the Federal Rules of Civil Procedure and Section[] . . . 1406(a) of the United States Code."  *In re Vitamins Antitrust Litig.*, 270 F. Supp. 2d 15, 36 (D.D.C. 2003); *see* Fed. R. Civ. P. 21 (permitting severance of parties or claims "at any time, on just terms"); *see also* 14D Charles Alan Wright, Arthur R. Miller & Richard D. Freer, Federal Practice and Procedure § 3827, at 559–60 (4th ed. 2024).

Accordingly, the Court will sever Giallella's claims against Defendant UPM from the remainder of the case and will transfer those claims to the Southern District of Florida, Miami Division.

## CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** UPM's motion to dismiss for lack of personal jurisdiction, **SEVERS** Giallella's claims against UPM, and **TRANSFERS** those claims to the Southern District of Florida.

**SO ORDERED.**

/s/ Randolph D. Moss  
RANDOLPH D. MOSS  
United States District Judge

Date: November 8, 2024