UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-24557-CIV-ALTONAGA/Reid

**REBECCA GIALLELLA**,

    Plaintiff,
v.

**UNITED PROPERTY MANAGEMENT, INC.**,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** came before the Court upon Plaintiff, Rebecca Giallella's Motion for Partial Summary Judgment [ECF No. 78], along with a supporting Statement of Material Facts ("Pl.'s SOF") [ECF No. 77], filed on June 24, 2025. Defendant, United Property Management, Inc. filed a Response [ECF No. 84], including a Response to Plaintiff's Statement of Material Facts ("Def.'s Resp. SOF") [ECF No. 84-1]; to which Plaintiff filed a Reply [ECF No. 89]. The Court has reviewed the record, the parties' written submissions, and applicable law. For the following reasons, the Motion is granted in part and denied in part.

**I. BACKGROUND**

This Fair Credit Reporting Act ("FCRA") action arises from Defendant's alleged mishandling of Plaintiff's identity theft claim. (*See generally* Compl. [ECF No. 1]).[1] Defendant manages Aventura Harbor Apartments in Miami Beach, Florida. (*See id.* ¶ 33). Plaintiff states she is a Washington, D.C. resident who lived in Florida — but never in the Miami area — until 2017.

---

[1] Plaintiff initiated this action in the District of Columbia, naming United Property Management, Inc. and two other entities as defendants. (*See generally* Compl.). On November 8, 2024, Plaintiff's claim against United Property Management, Inc. was severed and transferred to this District. (*See generally* Nov. 8, 2024 Mem. Op. & Order [ECF No. 23]).

(*See* Pl.'s SOF ¶¶ 1–3; *id.*, Ex. 1, Rebecca Giallella Dep. [ECF No. 77-1] 26:9–28:16; Def.'s Resp. SOF ¶¶ 1–3 (disputed)).

On January 3, 2022, Defendant received a rental application in Plaintiff's name. (*See* Pl.'s SOF ¶ 5; Def.'s Resp. SOF ¶ 5; *see also generally* Pl.'s Ex. List [ECF No. 71], Ex. A, Rental Appl.). The application included an image of a REAL ID-compliant Florida driver's license issued to "Rebecca Sutton Giallella"; contact information for the manager of the applicant's previous rental unit; and several pay stubs — two purportedly from the applicant's current employer, National Health Underwriters, and three purportedly from the applicant's previous employer, Hotwire Communications, LLC ("Hotwire"). (*See* Pl.'s SOF ¶¶ 7, 10, 13–14, 16; Def.'s Resp. SOF ¶¶ 7, 10, 13–14, 16 (disputed on other grounds)). The applicant also submitted a surety bond from an insurer showing coverage for the rental unit. (*See generally* Resp., Ex. 9, Residential Tenant Bond Certificate [ECF No. 84-9]).

As Plaintiff notes, the application contained inaccuracies and internally inconsistent representations. (*See* Mot. 16–17). For example, the pay stubs from National Health Underwriters included a non-existent street address and listed the last four digits of a social security number that did not match the social security number on the Hotwire pay stubs. (*See* Pl.'s SOF ¶¶ 11–12; Def.'s Resp. SOF ¶¶ 11–12). Further, the signature on the driver's license image spelled Plaintiff's last name as "Giallela" (Rental Appl. 23; *see also* Pl.'s SOF ¶ 16; Def.'s Resp. SOF ¶ 16 (disputed on other grounds)); and the email and phone number listed for the manager of the previous rental unit were identical to those listed for the applicant and for the applicant's supervisor at National Healthcare Underwriters, respectively (*see* Pl.'s SOF ¶¶ 6–9; Def.'s Resp. SOF ¶¶ 6–8, 9 (disputed on other grounds)).

Defendant rented an apartment to the applicant, and, on January 5, 2022, the applicant signed an Apartment Condition Report. (*See* Pl.'s SOF ¶ 17 (quotation marks omitted); Def.'s Resp. SOF ¶ 17; *see also generally* Pl.'s Ex. List, Ex. P, Apt. Condition Report [ECF No. 71-16]). Several months later, Defendant evicted the applicant for failure to pay rent. (*See* Pl.'s SOF ¶ 19; Def.'s Resp. SOF ¶ 19 (disputed on other grounds)). On July 18, 2022, Defendant informed Equifax, a credit reporting agency, that Plaintiff had opened an account with Defendant on January 5, 2022 (the "UPM Account") and was over 150 days past due on an outstanding balance of $12,828.00. (*See* Pl.'s SOF ¶ 21; Def.'s Resp. SOF ¶ 21).

In August 2022, Plaintiff discovered the UPM Account on her Equifax report and sent dispute letters to Equifax and Defendant, denying she had opened the account and reporting that she was a victim of identity theft. (*See* Pl.'s SOF ¶¶ 22–23, 26; Def.'s Resp. SOF ¶¶ 22–23, 26). Defendant received Plaintiff's dispute letter on September 7, 2022. (*See* Pl.'s SOF ¶ 23; Def.'s Resp. SOF ¶ 23). Defendant also received a copy of the letter Plaintiff sent to Equifax: on September 9, 2022, Equifax sent Defendant an Automated Consumer Dispute Verification form ("ACDV") with Plaintiff's submission. (See Pl.'s SOF ¶ 25; Def.'s Resp. SOF ¶ 25). With each letter, Plaintiff enclosed photos of her Washington, D.C. driver's license; a copy of a Washington, D.C. tax bill; a utility bill; and a notarized identity theft affidavit. (*See* Pl.'s SOF ¶ 26; Def.'s Resp. SOF ¶ 26).

Defendant maintains that it investigated Plaintiff's dispute using records that the federal government relies on for identity verification. (*See* Resp. 10 (citations omitted)).[2] Defendant asserts it reviewed the applicant's REAL ID-compliant Florida driver's license; examined the three

---

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

Hotwire pay stubs, which contained Plaintiff's social security number; and verified that Hotwire was a registered Florida limited liability company.[3] (*See id.* 12–13 (citations omitted)). On September 14, 2022, Defendant concluded its investigation and submitted a responsive ACDV form to Equifax, confirming that the UPM Account belonged to Plaintiff and the disputed information was accurate. (*See* Pl.'s SOF ¶ 50; Def.'s Resp. SOF ¶ 50 (disputed on other grounds)). On the responsive ACDV form, Defendant did not include a "Compliance Condition Code" indicating that Plaintiff had disputed the UPM Account. (*See* Pl.'s SOF ¶ 50; Def.'s Resp. SOF ¶ 50).

Several months later, Plaintiff obtained an Equifax credit report that incorrectly classified the UPM Account as a mortgage rather than a lease. (*See* Pl.'s SOF ¶ 53; Def.'s Resp. SOF ¶ 53). In response, Plaintiff initiated a second dispute with Equifax reiterating her fraud claim, noting Defendant had failed to mark the account as disputed, and highlighting the erroneous mortgage classification. (*See* Pl.'s SOF ¶ 54; Def.'s Resp. SOF ¶ 54). Equifax transmitted the second dispute to Defendant on January 4, 2023; and Defendant responded the next day, reaffirming the UPM Account's validity. (*See* Pl.'s SOF ¶¶ 55–56; Def.'s Resp. SOF ¶¶ 55–56).

In her Complaint, Plaintiff asserts that Defendant violated the Fair Credit Reporting Act, ("FCRA"), 15 U.S.C. section 1681s-2(b), by failing to conduct a reasonable investigation of her dispute ("Count III"). (*See id.* ¶¶ 122–129). Defendant asserts eight affirmative defenses, several of which challenge Plaintiff's prima facie case — including that any damages Plaintiff incurred were caused by third parties ("First Affirmative Defense"); Defendant conducted a reasonable

---

[3] Defendant insists its investigation did not rely on the pay stubs from National Health Underwriters — which listed a conflicting and inaccurate social security number — because "three complete, legitimate [Hotwire] pay stubs matching . . . Plaintiff's social security number and full name were provided to [Defendant], rendering the two [Hotwire] pay stubs obsolete." (Def.'s Resp. SOF ¶ 43 (alterations added); *see also id.* ¶ 12; Pl.'s SOF ¶ 12).

4

investigation of Plaintiff's disputes ("Second and Third Affirmative Defenses"); and Defendant did not report inaccurate information to Equifax ("Fourth Affirmative Defense"). (*See* Ans. [ECF No. 52] 33–36)

Plaintiff now seeks partial summary judgment on her FCRA claim and on Defendant's First, Second, Third, and Fourth Affirmative Defenses. (*See generally* Mot.). Defendant concedes that summary judgment is warranted on its Third Affirmative Defense (s*ee* Resp. 20), but it argues that factual disputes preclude summary judgment on Plaintiff's FCRA claim and the remaining affirmative defenses (*see generally id.*).

## II. LEGAL STANDARD

Summary judgment may be rendered if the pleadings, discovery, and disclosure materials, and any affidavits show there is no *genuine* dispute of any *material* fact and the movant is entitled to judgment as a matter of law. *See* Fed. Rs. Civ. P. 56(a), (c). A fact is "material" if it might affect the outcome of the case under the governing law, and a dispute is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). When considering motions for summary judgment, a court views the facts, and draws all reasonable inferences, in favor of the non-moving party. *See Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012) (citations omitted).

When a plaintiff moves for summary judgment on a defendant's affirmative defenses, the defendant bears the initial burden of showing the defense applies. *See Off. of Thrift Supervision v. Paul*, 985 F. Supp. 1465, 1470 (S.D. Fla. 1997) (citing *Blue Cross and Blue Shield v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990)). To meet this burden, the defendant must "rely on record evidence in support of its affirmative defenses to create a genuine issue of material fact[.]" *Collazo*

5

*v. Progressive Select Ins. Co.*, No. 20-25302, 2021 WL 5330647, *2 (S.D. Fla. Nov. 16, 2021) (alteration added; citation omitted). The burden then shifts to the plaintiff to show the defense does not apply. *See Off. of Thrift Supervision*, 985 F. Supp. at 1470 (S.D. Fla. 1997) (citing *Blue Cross and Blue Shield*, 913 F.2d at 1552 n.13).

### III.  DISCUSSION

Plaintiff is not entitled to summary judgment on her FCRA Claim and Defendant's First, Second, and Fourth Affirmative defenses. The Court grants summary judgment on Defendant's Third Affirmative Defense because, according to the parties, there is no longer a disputed issue of material fact. (*See* Resp. 20). The Court first addresses Plaintiff's FCRA claim before turning to Defendant's affirmative defenses.

#### A.  **Fair Credit Reporting Act Claim**

The FCRA requires a data furnisher, like Defendant, to conduct a reasonable investigation upon receiving a consumer dispute. *See* 15 U.S.C. § 1681s-2(b); *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1301 (11th Cir. 2016) (citation omitted). As part of its investigation, the furnisher must "review all relevant information provided by the consumer reporting agency" and "report the results of the investigation to the credit reporting agency[.]" 15 U.S.C. §§ 1681s-2(b)(1)(A)-(C) (alteration added). After investigating, a furnisher must either verify the disputed information, determine the information is inaccurate or incomplete, or determine the information cannot be verified. *See id.* §§ 1681s-2(b)(1)(D)–(E).

Where, as here, "a furnisher reports that disputed information has been verified, the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Hinkle*, 827 F.3d at

1303. The reasonableness of a furnisher's investigation "is a factual question" ordinarily "reserved for trial." *Id.* (citing *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005)).

Plaintiff contends that Defendant's investigations into her identity theft disputes were unreasonable — pointing to inconsistent information Defendant overlooked and actions Defendant did not take, such as checking the validity of the Florida driver's license with the Florida Department of Motor Vehicles. (*See* Mot. 14–20; Reply 6–8). The record evidence is hotly disputed on these issues. Defendant insists that its reliance on the Florida's driver's license image, the applicant's rental surety bond, and three cross-referenced paystubs was reasonable. (*See* Resp. 13–16). Given the fact-intensive nature of what constitutes a reasonable investigation — and the parties' factual disputes about key elements of the investigations, such as what steps Defendant took to validate the Washington, D.C. driver's license Plaintiff submitted (*see* Pl.'s SOF ¶¶ 46–49; Def.'s SOF ¶¶ 46–49) — the reasonableness of Defendant's investigation is an issue for trial, *see Hinkle*, 827 F.3d at 1303.

### B. First Affirmative Defense

Defendant's First Affirmative Defense is that Plaintiff's damages "are the result of acts or omissions of third parties[.]" (Ans. 33 (alteration added)). Initially, Defendant asserted as part of this defense that Equifax failed to provide an "ACDV notification regarding Plaintiff's alleged identity theft." (*Id.*). Defendant now admits it received ACDV notifications (*see* Pl.'s SOF ¶ 63), and it concedes that summary judgment is warranted as to the First Affirmative Defense's reference to ACDV notifications — but not as to the remainder of the defense, which encompasses third-party actions more generally (*see* Resp. 19).

Plaintiff contends Defendant's admission about ACDV notifications disposes of the entire defense. (*See* Mot. 22). This argument overlooks the other facts supporting Defendant's First

Affirmative Defense. (*See* Ans. 33). The parties' briefing confirms that factual disputes remain about whether Equifax's acts or omissions contributed to any damages Plaintiff sustained. (*See* Resp. 4–8 (citing *id.*, Ex. 2, Danni-Lee McCarthy Aff. [ECF No. 84-2] ¶¶ 38–39), 19–20; Reply 5–6). Given these disputes, summary judgment on the First Affirmative Defense is not appropriate.

### C. Second Affirmative Defense

Defendant's Second Affirmative Defense is that it "had reasonable procedures in place to assure compliance with the provisions of 15 U.S.C. section 1681s-2(a)(6)(A)." (Ans. 33). Plaintiff argues this defense is inapplicable because she has not brought a claim under section 1681s-2(a)(6)(A), which is not privately actionable. (*See* Mot. 22). Defendant concedes that Plaintiff does not bring such a claim — and that partial summary judgment is warranted on the "applicability" of section 1681s-2(a)(6)(A) — but insists the Second Affirmative Defense should withstand summary judgment to the extent it relates to the reasonableness and sufficiency of Defendant's investigation. (Resp. 20).

An assertion that Defendant's investigation was reasonable and sufficient is not a proper affirmative defense. An affirmative defense must "admit[] the essential facts of a complaint and set[] up other facts in justification or avoidance." *FAST SRL v. Direct Connection Travel LLC*, 330 F.R.D. 315, 319 (S.D. Fla. 2018) (alterations added; citation and quotation marks omitted); *see also In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988) (noting that an affirmative defense "raises matters extraneous to the plaintiff's *prima facie* case" (citation omitted)). "A defense which points out a defect in the plaintiff's *prima facie* case is not an affirmative defense." *Rawson Food Serv.*, 846 F.2d at 1349. When a defendant mislabels a denial as an affirmative defense, the proper remedy is to treat the claim as a denial. *See FAST SRL*, 330 F.R.D. at 319.

Because Plaintiff must show, as part of her prima facie case, that Defendant failed to conduct a reasonable investigation into her credit dispute (*see* Mot. 12–13; Resp. 8), Defendant's defense that it performed a reasonable investigation simply denies an element of Plaintiff's claim — and cannot be resolved by summary judgment. *See FAST SRL*, 330 F.R.D. at 319.

### D. Fourth Affirmative Defense

Defendant's Fourth Affirmative Defense — which asserts that "the report disputed by Plaintiff . . . is factually accurate" (Ans. 34 (alterations added)) — is also a denial rather than a true affirmative defense. To succeed on her claim under 15 U.S.C. § 1681s-2(b), Plaintiff must prove that Defendant provided inaccurate or incomplete information to Equifax. *See Garcia v. Equifax Info. Servs., LLC*, No. 24-13721, 2025 WL 1293369, at *3 (11th Cir. May 5, 2025) (citation omitted).

As with other elements of Plaintiff's prima facie case, genuine disputes of material fact exist as to the accuracy of the reports. (*See* Mot. 8–12; Resp. 1–8; Reply 1–3). Defendant cites the image of the Florida driver's license, Plaintiff's history of living in Florida, and the three Hotwire paystubs with Plaintiff's correct social security number, as evidence Plaintiff rented the apartment and incurred the reported debt. (*See* Resp. 1–3). Plaintiff points out that Defendant has not produced non-speculative evidence showing the Florida license was valid. (*See* Reply 2–3). She also points to the inaccuracies and inconsistencies in the application — including the National Health Underwriters pay stubs — which Defendant's employee admitted contained "red flag[s]" suggesting fraud (Mot., Ex. 3, Danni-Lee McCarthy Dep. 55:14–17, 62:6–63:3 (alteration added)) — as proof she was not the applicant (*see* Mot. 8–12; Reply 1–4). Given these factual disputes, whether Defendant submitted inaccurate information to Equifax is an issue for trial.

Accordingly, it is

9

CASE NO. 24-24557-CIV-ALTONAGA/Reid

**ORDERED AND ADJUDGED** that Plaintiff, Rebecca Giallella's Motion for Partial Summary Judgment **[ECF No. 78]** is **GRANTED in part and DENIED in part**.  The Motion is granted as to Defendant, United Property Management, Inc.'s Third Affirmative Defense.  The Motion is denied as to Count III and Defendant's First, Second, and Fourth Affirmative Defenses.

**DONE AND ORDERED** in Miami, Florida, this 6th day of August, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:   counsel of record